UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **VALLEJO ENTERTAINMENT LLC**,<br><br>   *Plaintiff,*<br><br>v.<br><br>**SMALL BUSINESS ADMINISTRATION**, *et al.*,<br><br>   *Defendants.* | Case No. 1:22-cv-1548-RCL |

**MEMORANDUM OPINION**

Plaintiff Vallejo Entertainment LLC brings this action against the Small Business Administration and its Administrator (collectively, the SBA), alleging that the SBA unlawfully denied it a grant available to eligible venue operators that were adversely affected by the COVID-19 pandemic. Before the Court are the parties' cross-motions for summary judgment. Vallejo MSJ, ECF No. 44; SBA MSJ, ECF No. 55. For the reasons given below, the Court will deny Vallejo's motion for summary judgment and grant the SBA's cross-motion for summary judgment.

### I.   BACKGROUND

**A. The Shuttered Venue Operators Grant Program**

To help event venues "stay afloat" during the COVID-19 public health emergency, Congress established the Shuttered Venue Operators Grant (SVOG) Program. Economic Aid to Hard-Hit Small Business, Nonprofits, and Venues Act, Pub. L. No. 116-260, § 324, 134 Stat. 1182, 2022–32 (2020) (codified at 15 U.S.C. § 9009a). Under the program, an eligible entity could apply for grants up to $10 million upon certifying "that the uncertainty of current economic conditions"

1

made the grant necessary to "support [its] ongoing operations." 15 U.S.C. § 9009a(b)(1)(B), (c)(1)(A)(ii), (c)(3).

To receive an SVOG award, an applicant needed to establish, among other things, that (1) it "was fully operational" as of February 29, 2020; (2) it had gross earned revenue during the first, second, third, or—if the application was submitted on or after January 1, 2021—the fourth quarter of 2020; and (3) the gross earned revenue "demonstrates not less than a 25 percent reduction from the gross earned revenue . . . during the same quarter in 2019." *Id.* § 9009a(a)(1)(A)(i). An eligible entity received an initial grant award of 45 percent of its 2019 gross earned revenue. *Id.*

### B. Vallejo's Application for SVOG Funding

Vallejo is a live venue operator and promoter located in Puerto Rico. In August 2021, Vallejo applied for a $715,462.36 SVOG award. AR 6–7. Vallejo reported to the SBA that its 2019 revenue totaled $1,589,916.35 but that, in 2020, its revenue dropped about thirty percent to $1,106,066.72. AR 356, 360. Vallejo submitted two Form 480.60 ECs, which are only one of the tax documents that a Puerto Rico business like Vallejo must file. AR 50–51, 130–31, 368. These forms contained no information to substantiate Vallejo's claimed revenues. Vallejo did, however, submit two forms (IRS Form 4506-T and Departamento de Hacienda Form Modelo SC 2907), which allowed the SBA to request Vallejo's complete tax transcripts. AR 36–38.

But a few weeks after Vallejo submitted its application, the SBA informed Vallejo that it had not been able to obtain its tax transcript from the Puerto Rico Department of the Treasury with the information Vallejo had provided. AR 39, 368. The SBA advised Vallejo to provide alternative documentation verifying Vallejo's 2019 revenue. AR 39. The SBA provided a list of four "Alternative Verification Documents." AR 45. These documents were as follows: (1) "Audited Financial Statements for 2019"; (2) "Official" 2019 "tax return transcript" from "SURI,"

the Department of the Treasury of Puerto Rico's online portal; (3) A "file stamped copy" of the 2019 "Official Tax Transcripts" from SURI; (4) "A copy of the Official Tax Transcripts . . . and [a] letter from CPA certifying" that the transcripts were "prepared and submitted . . . by that CPA." AR 45.

Rather than submit one of these options, Vallejo instead provided two unlisted documents. The first was a report dated October 23, 2019, that appears to have originated from Puerto Rico's Consumption Tax Office. AR 42. The second was an uncertified (and untitled) chart for an event held on October 12, 2019, indicating ticket sales and the amounts paid in state and municipal taxes on the ticket earnings. AR 43. Neither document demonstrated Vallejo's 2019 revenue.

On September 30, 2021, the SBA again contacted Vallejo, informing the applicant that these documents were not sufficient and providing another opportunity to submit one of the four alternative verification documents. AR 47–49. Vallejo again failed to provide the requested information and instead again submitted its Form 480.60 ECs. AR 369.

SBA denied Vallejo's application in October 2021, and Vallejo appealed, but the SBA affirmed the denial. AR 2–3, 54–56, 369. Vallejo then brought this suit on June 1, 2022, seeking judicial review. ECF No. 1. On July 29, 2022, the SBA rescinded its decision and informed Vallejo that it would issue a new decision "based upon our review of the administrative record." AR 30. After again reviewing Vallejo's application, the SBA determined, on October 26, 2022, that Vallejo had failed to demonstrate that it qualified for the SVOG award. AR 368–70 ("Vallejo failed in its application and appeal to provide information required to make an award, and therefore it is not eligible to receive an award under the SVOG statute.").

On January 10, 2023, Vallejo amended its complaint to argue that the SBA's new decision violated the Administrative Procedure Act (APA), 5 U.S.C. § 706. Amended Complaint ¶¶ 69,

3

79–100, ECF No. 14. Vallejo subsequently moved for summary judgment, and this motion is now ripe. Vallejo MSJ, ECF No. 44; SBA MSJ, ECF No. 55; Vallejo Reply, ECF No. 58; SBA Reply, ECF No. 61.

## II.  LEGAL STANDARDS

### A. Summary Judgment in the APA Context

Outside the APA context, a movant seeking summary judgment must show that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). But fact issues that might preclude summary judgment are often instead "issues of law in the context of agency review." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001). The agency's job is to make factual findings and "reach a decision that is supported by the administrative record." *Truitt*, 554 F. Supp. 3d at 174. The job of the district court, sitting as an "appellate tribunal," is to resolve whether the agency's decision was unlawful—which often includes reviewing whether the decision was indeed supported by the record. *Id*.

### B. Judicial Review Under the APA

The Administrative Procedure Act provides for judicial review of final agency action. 5 U.S.C. §§ 702, 704. A reviewing court must "hold unlawful and set aside agency action" that is, among other defects, "arbitrary, capricious, [or] . . . not in accordance with law." *Id*. § 706(2). The APA generally limits judicial review to the administrative record. *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010).

## III.  DISCUSSION

This case involves a host of challenges to the SBA's denial of Vallejo's SVOG application. They all fall under the broad umbrellas of "arbitrary and capriciousness" or "contrary to law." The Court will take each in turn.

### A. Arbitrary and Capricious

Vallejo raises several bases for finding the SBA's denial to be arbitrary and capricious. Agency action is arbitrary and capricious when an agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [was] so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Virginia v. Johnson*, 609 F. Supp. 2d 1, 6–7 (D.D.C. 2009) (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "Under this highly deferential standard of review, the court presumes the validity of agency action and must affirm unless the [agency] failed to consider relevant factors or made a clear error in judgment." *Nat'l Lifeline Ass'n v. Fed. Commc'ns Comm'n*, 983 F.3d 498, 507 (D.C. Cir. 2020) (quoting *Cellco P'ship v. FCC*, 357 F.3d 88, 93–94 (D.C. Cir. 2004)). The SBA made no such error in this case.

#### 1. Basis in the Administrative Record

The Court begins with Vallejo's contention that the SBA's decision is not supported by the administrative record. To prove eligibility for an SVOG grant, Vallejo had to establish (among other things) that it had "gross earned revenue" in at least one quarter of 2020, and this gross revenue "demonstrates not less than a 25 percent reduction from the gross earned revenue . . . during the same quarter in 2019." 15 U.S.C. § 9009a(a)(1)(A). Vallejo asserted in its application that its 2019 revenue was $1,589,916.35, while its 2020 revenue was $1,106,066.72—making it eligible for a grant worth 45 percent of its 2019 revenue (or $715,462.36). AR 368–69. But Vallejo has not pointed to anything in the record before the SBA substantiating these amounts.

Vallejo insists that it attached its 2019 and 2020 tax returns to its application. *See* Vallejo MSJ at 7, ECF No. 44-1; Vallejo Reply at 3, ECF No. 58. But that is not accurate. Vallejo

submitted an IRS Form 4506-T and Deparamento de Hacienda Form Modelo SC 2907—which are used to *request* tax transcripts—and it submitted its 2019 and 2020 Form 480.60 EC.

A Form 480.60 EC is a report that a pass-through entity must provide to each owner summarizing "the information required to be included on the owner's income tax return"; it describes the owner's distributive share of income and losses—not the total gross income of the entity—meaning that the provides information relevant to the individual tax return of an owner, not necessarily the tax information relevant to the entity itself.[1] The Form 480.60 ECs, therefore, could not help prove Vallejo's 2019 revenue.

Rather, it appears that Vallejo's complete tax transcripts should have included a Form 480.20 EC—Puerto Rico businesses that pay taxes as pass-through entities must file this type of return to report the income earned by the entity during the corresponding taxable year and, notably, a Form 480.60 EC "must be included with the filing of" a Form 480.20 EC.[2] This is consistent with the SBA's decision, which stated that while a Form 480.60 EC "may be required" for pass-through entities, it "is not an adequate substitute" for an entity's own return. AR 368. By contrast, the Court finds no basis to credit Vallejo's assertion that a Form 480.60 EC is the sole tax document a Puerto Rico pass-through entity needs to file.

---

[1] 2019 Form 480.60 EC (English Translation) at 3, https://hacienda.pr.gov/sites/default/files/documentos/480.60_ec_2019_informative_1.pdf [https://perma.cc/WWG7-VFDZ]; *see also* Departamento de Hacienda, 2019 Form 480.60 EC Informative Return Pass-through Entity, https://hacienda.pr.gov/documentos/2019-declaracion-informativa-entidad-conducto-participacion-distribuible-de-los-socios-o-participacion-proporcional-de-los-accionistas-en-ingresos-perdidas-y [https://perma.cc/7PXD-ETE8].  The Court takes judicial notice of the 2019 Form 480.60 EC and its instructions. Fed. R. Evid. 201(c); *see also Africare, Inc. v. Xerox Complete Document Sols. Maryland, LLC*, 436 F. Supp. 3d 17, 45 n.21 (D.D.C. 2020) (taking judicial notice of tax form).

[2] 2019 Form 480.20 EC Instructions (English Translation) at 1, https://hacienda.pr.gov/sites/default/files/documentos/inst_pass-through_entity_2019.pdf [https://perma.cc/N44E-738W]; 2019 Form 480.20 EC (English Translation), https://hacienda.pr.gov/sites/default/files/documentos/480.20ec_2019_to_be_submitted_electronically.pdf [https://perma.cc/KX45-VK54]; *see also* DEPARTAMENTO DE HACIENDA, 2019 Form 480.20 EC Informative Income Tax Return Pass-Through Entity, https://hacienda.pr.gov/documentos/2019-planilla-informativa-sobre-ingresos-de-entidades-conducto-e-instrucciones-informative-income-tax-return-pass-through-entity [https://perma.cc/4A2Z-XD6Z]. As above, the Court takes judicial notice of the 2019 Form 480.20 EC and its instructions. Fed. R. Evid. 201(c); *see also Africare, Inc.*, 436 F. Supp. 3d at 45 n.21.

6

As for the Form 4506-T and Modelo SC 2907, the SBA notified Vallejo it could not obtain Vallejo's 2019 tax transcript from the Department of the Treasury of Puerto Rico using the information provided. AR 39. The SBA made clear that if Vallejo wished "to continue the application process," Vallejo would need to provide one of the following "alternative verification documents": (1) Audited Financial Statements for 2019; (2) Official 2019 tax return transcripts from the Department of the Treasury of Puerto Rico's online portal; (3) A "file stamped copy" of official 2019 tax transcripts from the online portal; (4) A copy of official 2019 tax transcripts and a "letter from CPA certifying" that the transcripts were "prepared and submitted . . . by that CPA." AR 39, 45. Vallejo did not provide any of these documents. It instead submitted (1) a report from Puerto Rico's Consumption Tax Bureau and (2) an untitled chart indicating ticket sales from an event held in 2019 and the amounts paid in state and municipal taxes on the ticket earnings. AR 42–43. Neither document provided information that could substantiate Vallejo's earned revenue.

Vallejo contends that it is entitled to an SVOG grant because it has now provided the requisite evidence—namely, Vallejo has supplemented the administrative record with a declaration from its accountant, Carlos Ramos, who prepared and filed Vallejo's 2019 and 2020 tax documents. Ramos Declaration ¶¶ 2–4, ECF No. 48-1. But this declaration, dated August 15, 2024, comes nearly two years too late: the SBA could not have considered this evidence when making its decision in the summer of 2022, and what matters for this Court's review is whether the agency action was reasonable in light of the evidence it had at the time. As such, the Ramos declaration does not render the SBA's decision arbitrary and capricious.

2. **Reasoned Decision**

Vallejo next asserts that the SBA's decision was arbitrary and capricious because it lacked explanation—that is, Vallejo contends that it did not know why its application was denied and

7

therefore could not correct the error on appeal. But while it is true that the SBA's initial denial in 2021 did not explicitly state a reason, the SBA had already conveyed to Vallejo that the application would be denied if Vallejo failed to provide one of the approved verification documents. AR 39. And in any case, the final agency action under review is not the 2021 denial, which was rescinded, but instead the SBA's October 2022 decision. This latter action explained that Vallejo's application was denied because Vallejo had failed to provide proper evidence of its 2019 and 2020 revenue. So the fact that the 2021 decision did not include an explicit explanation is irrelevant since the 2022 decision, which is under review, was supported by adequate reasoning.

And while Vallejo argues it did not know the basis for the SBA's initial denial of its application, at no point has Vallejo suggested that it was ignorant of the fact that proof of revenue was necessary to qualify for an SVOG grant. On this record, there is no basis for Vallejo to argue that it did not have notice of the eligibility requirements. Before denying Vallejo's application, the SBA gave Vallejo multiple opportunities to send one of the approved verification documents. AR 39, 45, 47. These correspondences informed Vallejo, "with 'ascertainable certainty,' the standards with which the agency expect[ed] [applicants] to conform." *Howmet Corp. v. EPA*, 614 F.3d 544, 553–54 (D.C Cir. 2010) (quoting *Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1329 (D.C. Cir. 1995)).

### 3. Consistency with Published Guidance

Nor was the SBA's decision inconsistent with its previous published guidance, contrary to Vallejo's assertions. Vallejo argues that a "fail[ure] to submit adequate documentation" is not a valid reason to deny an application under SVOG guidelines because the SBA removed this justification from the list of reasons an application may be denied from its website in October 2021. Vallejo MSJ 9–11, ECF No. 44-1. But like the earlier guidance, the October 2021 guidance

makes clear that an applicant will not receive a grant if it fails to meet the definition of an eligible entity or lacks the required revenue loss. AR 324–25. This same guidance also specifically instructs applicants who have appealed their denial to "carefully review . . . the list of acceptable documents to ensure they upload all relevant documents during the appeals process." AR 347. Vallejo does not explain how it could qualify as an eligible entity without first providing evidence of its eligibility. The Court is therefore not persuaded by Vallejo's assertion that the SBA could not deny its application for being incomplete.

In its reply brief, Vallejo additionally asserts that the SBA's decision was inconsistent with published guidance because after denying Vallejo's application the SBA subsequently contradicted the notion that tax returns provide useful evidence of revenue in a report prepared by the Office of the Inspector General titled "SBA's Internal Controls to Prevent Shuttered Venue Operators Grants to Ineligible Applicants." Vallejo Reply at 1, ECF No. 58; OIG Report, ECF No. 58-1. Vallejo suggests that this report tells SVOG applicants that the SBA will not investigate too deeply any assertions made on an application because such assertions are to be presumed as true. Vallejo Reply at 5, ECF No. 58 ("The SBA simply ignores this evidence because it was 'self-reported.' . . . Defendants' unusually strict application of its rules contradicts its own internal guidance to 'presume applicant assertions to be true' . . . ." (citation omitted)).

At the outset, this argument regarding the Inspector General's report is waived since Vallejo has raised it for the first time in its reply brief. *Nippon Shinyaku Co., Ltd. v. Iancu*, 369 F. Supp. 3d 226, 240 n.8 (D.D.C. 2019). But even if waiver were excused, the Court is skeptical that the Inspector General report—which aims at preventing ineligible applicants from receiving grants—supports the interpretation that Vallejo reads it for. Put differently, the Inspector General's characterization of the SBA's position on the utility of tax returns in determining an

applicant's revenue does not strike the Court as any kind of general policy statement. And in any case, this report was published on October 23, 2023, while the challenged SBA decision was issued nearly a year before, on October 26, 2022. Even if the Court were to entertain the notion that this report represents a change in position by the agency, Vallejo provides no explanation as to why a putative policy change contained in a post-decisional Inspector General report renders the agency action arbitrary and capricious. In other words, Vallejo does not explain why the report retroactively binds the agency, particularly since Vallejo offer no reason as to why it should be viewed as evidence for the SBA's position when it denied Vallejo's application in 2022.

### 4. Disparate Treatment

The last of Vallejo's arbitrary-and-capriciousness arguments is a contention that the SBA treated Vallejo disparately from other similarly situated entities. Specifically, Vallejo asserts that the SBA did not require other entities that applied for SVOG grants to submit the same financial documents. In its complaint and its briefing, Vallejo lists several businesses that it argues were held to a lower evidentiary bar, but Vallejo provides little to substantiate this argument. MSJ Vallejo at 14, ECF No. 44-1 (citing Amended Complaint ¶¶ 79–81, ECF No. 19).

At best, Vallejo cites a plaintiff's motion for summary judgment in a case decided by another session of this district. MSJ Vallejo at 15, ECF No. 44-1 (citing Plaintiff's MSJ at 10, *Champion Matters LLC v. SBA*, 1:22-cv-616 (D.D.C. Oct. 26, 2022), ECF No. 40). Vallejo argues that in the case of *Champion Matters LLC*, the SBA provided the plaintiff an opportunity to cure an application deficiency under a lenient standard—allowing, for example, the applicant to submit a "receipt of revenue" from "ticket purchases" as evidence. MSJ Vallejo at 15, ECF No. 44-1 (quoting Plaintiff's MSJ at 10, *Champion Matters LLC*, 1:22-cv-616).

What Vallejo fails to point out is that the SBA accepted this type of evidence to satisfy a separate application requirement from the one at issue here. Specifically, such evidence supported the requirement for live venue operators to demonstrate that "70 percent of the earned revenue of the . . . entity [be] generated through . . . cover charges or ticket sales, production fees or production reimbursements, nonprofit educational initiatives, or the sale of event beverages, food, or merchandise." 15 U.S.C. § 9009a(a)(3)(A)(i)(II). That the SBA allowed an applicant to provide ticket purchase records or similar documentation to demonstrate the *source* of revenue does not mean that the SBA permitted such evidence to demonstrate an applicant's amount of revenue.

Next, Vallejo asserts that the SBA admitted that it treated Vallejo differently. In its 2022 decision, the SBA addressed Vallejo's disparate-treatment claim by stating that staff had completed a review of the listed applicants, "and in each case the applicant properly completed the SVOG application, including providing compete entity tax returns or providing other authoritative validation of claimed revenues." AR 370. Vallejo argues that this statement admits to disparate treatment because Vallejo was not given the opportunity to provide "other authoritative validation." Vallejo MSJ at 14–15, ECF No. 44-1. The Court finds this argument perplexing since the SBA gave Vallejo the opportunity to provide alternative verification documents, which included audited financial statements for 2019. AR 45. There is therefore no basis for Vallejo to argue that it did not have an opportunity to provide "other authoritative validation of claimed revenues." In sum, the Court is left with no evidence of disparate treatment.

### B. Contrary to Law

Lastly, Vallejo posits that the SBA's decision denying its application was inconsistent with the agency's statutory mandate and an Executive Order instructing the agency to put processes in place to maximize available relief. Vallejo MSJ ECF at 16–18, ECF No. 44-1. Further along these

11

lines (and citing a case from the Court of International Trade in support) Vallejo argues that the SBA had a duty to assist Vallejo with its application. *Id.* at 17–18 (citing *Former Emps. of BMC Software, Inc. v. Sec'y of Lab.*, 454 F. Supp. 2d 1306 (U.S. Ct. Int'l Trade 2006)). To begin, the Court does not countenance any argument that the SBA acted contrary to law by denying a grant to an applicant who failed to prove their eligibility. And as for whether the SBA had a duty to assist Vallejo with its application, it is enough to say that the SBA did so by providing Vallejo with multiple opportunities to fix the deficiencies in its application and informing Vallejo of the specific documents that needed to be submitted.

\* \* \*

In its reply brief, Vallejo also argues that the SBA's decision was contrary to law because the SBA violated the Paperwork Reduction Act, 44 U.S.C. §§ 3501–21, by requesting that Vallejo submit one of the four alternative verification documents in lieu of information with which the SBA could have requested Vallejo's tax transcripts. Vallejo Reply at 2, ECF No. 58. The Court sees little merit in the notion that the SBA violated the Act by providing Vallejo an opportunity to remedy the deficiency in its application. But in any event, the Court will not consider this argument since Vallejo has offered no basis to deviate from the ordinary rule that an argument raised "for the first time in [a] reply brief" is deemed "waived." *Lindsey v. District of Columbia*, 879 F. Supp. 2d 87, 95 (D.D.C. 2012).

## IV.   CONCLUSION

For the reasons stated above, the Court will **DENY** Vallejo's motion for summary judgment and **GRANT** the SBA's cross-motion for summary judgment.

A separate order shall issue.

Date: _12-19-25_

Royce C. Lamberth
United States District Judge